UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

CRESTWOOD TECHNOLOGY GROUP CORP., :

                                             : Civil Action No:

                Plaintiff,       :

                                             :

                                           : **COMPLAINT**

               v.                   :

                                           :

PATRICK DUNN,                   :

                Defendant   :

-----------------------------------------------------------x

Plaintiff, Crestwood Technology Group, Corp. ("CTG" or "Plaintiff") hereby brings the following Complaint for injunctive relief and damages against Defendant Patrick Dunn ("Dunn" or "Defendant") for (i) violation of the Defend Trade Secrets Act of 2016; (ii) misappropriation of trade secrets; (iii) breach of contract; (iv) theft/conversion; (v) violation of the Computer Fraud and Abuse Act; and (vi) unfair competition.

## PARTIES

1.      CTG is a corporation organized and existing under the laws of the State of New York, with its principal place of business located in Yonkers, New York.

2.      Defendant is a former CTG executive, who was employed as CTG's Executive Vice President, Corporate Development. Defendant currently resides in Maryland.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331, as this action arises under the laws of the United States, specifically 18 U.S.C. §1030 and 18 U.S.C. §1833. Furthermore, this Court has supplemental jurisdiction over the state law claims articulated herein pursuant to 28 U.S.C. §1367.

4.     This Court also has proper jurisdiction over the subject matter of this action under 28 U.S.C. §1332 (a)(1) as the matter in controversy exceeds the sum of $75,000 and is between citizens of different states.

5.     This Court has personal jurisdiction over Defendant pursuant to NYCPLR 302(a)(1), (2) and (3) because Defendant was employed by CTG in New York and performed services in the State of New York.  He committed various tortious acts within New York State and/or Defendant has caused injury to CTG within New York State arising out of tortious act by Defendant outside the state while soliciting business or providing services activities within the state and deriving substantial revenue from goods and services rendered within the state.

6.     Venue is proper in this Court pursuant 28 U.S.C §1391 (b)(2) and (3) because a substantial part of the events or omissions that give rise to the claims asserted herein occurred in this district.

## FACTS

7.     CTG distributes electronic components, electromechanical parts, military, commercial aviation parts and services, aerospace parts, and hardware parts. It offers, among other things, active and passive components, converters, capacitors, circuit breakers, connectors, couplers/attenuators, crystals, diodes, discrete semiconductors and electromechanical products, filters, fuses, interconnects, inductors, and integrated circuits. In addition to these services, CTG also deals with consignment inventory and excess inventory.  It serves the U.S. military, aerospace and defense, commercial aviation, biotechnology, telecommunications, medical, marine, commercial, and industrial manufacturing industries. CTG was founded in 2001 and is based in Yonkers, New York.  It has fewer than 100 employees.

8.      Due to its business with various United States governmental agencies and other governmental contractors, certain CTG employees may be required to be cleared to work on certain government contracts through the Department of the Navy.

9.      Due to the sensitive nature of CTG's business, CTG goes through great lengths to secure its trade secrets and other confidential information. First, CTG provides yearly ethics training, training to ensure confidentiality of its customers, their preferences, pricing, previous orders and other information regarding its clients. This information is not known to the general public, not listed anywhere and is confidential and proprietary information. Defendant and all employees have attended numerous training sessions. Second, Defendant and all employees were specifically informed that he/she could not forward confidential customer information to non-secured servers, e-mail accounts. Third, since Defendant and other employees work closely with CTG's clients, was well paid and CTG paid business expenses in so Defendant could cultivate these relationships with CTG clients, Defendant agreed to be bound by a confidentiality agreement keeping all CTG information confidential.

10.     CTG undergoes many safeguards to protect its customer lists, e-mails and all stored electronic information. Unless there is express written permission, CTG employees are informed that they are forbidden from compromising any of CTG's data and cannot send any e-mails to their personal e-mail accounts, such as a Gmail account, Yahoo, etc.

11.     Defendant became a CTG employee on January 1, 2016. Defendant was employed as CTG's Executive Vice President Strategic Initiatives. Defendant's title changed to Executive Vice President, Corporate Development, however his duties remained the same. Defendant was paid an annual salary of $300,000 plus other benefits enjoyed by CTG employees. Defendant's duties involved, among other things, regularly meeting with upper

3

management of CTG's top 25 customers, developing new opportunities for business and working with the sales staff to foster stronger customer relationships.

12.     Due to the highly sensitive nature of Defendant's work with CTG clients, as part of his employment and to be paid his annual salary and other fringe benefits, Mr. Dunn agreed to be bound by Confidentiality and Work Product Agreement.  Defendant agreed, among other things, that following one year following the last day of his employment, he cannot solicit or attempt to solicit any business from any CTG customers, including actively sought prospective customers with whom Defendant had contact with during Defendant's employment for the purpose of providing products or services that are competitive with CTG.   Also, Defendant agreed to keep all CTG business information confidential.

13.      CTG expends various resources and money in cultivating its clients and ensuring that their business needs are met.   In 2016, Defendant spent over $35,000 in cultivating relationships with CTG customers and clients, all of which was paid by CTG.   In 2017, Defendant spent over $10,000 in cultivating relationships with CTG customers and clients.

14.     Due to Mr. Dunn's actions prior to him becoming employed by CTG, he was suspended by CTG due to the pending debarment with the Department of the Navy from March 30, 2017 to June 19, 2017.  During this time, Mr. Dunn could not have any contact with CTG customers or clients and could not receive any CTG work e-mails or have any contact or dealings with any of CTG's business.   After June 19, 2017, CTG reinstated Defendant's employment.

15.     During the routine monitoring of the Company's e-mail system, Nick Sparaco, CTG's Chief Technology Officer, discovered that on or about September 19, 2017, Defendant had 37 secure e-mails forwarded to his personal G-mail account.  This is in direct

violation of CTG's protocols, policies and training. These e-mails contained CTG's customer's names, contact information, and customer preferences. This information is not known to the public and is safeguarded by CTG. The e-mails, which contained confidential customer information and preferences spanned from 2014 to the present.

16. Upon this discovery, Mr. Sparaco immediately informed Joe Mancino, CTG's Chief Executive Officer, and Michael Boyd, CTG's Chief Sales Officer. Mr. Sparaco began an investigation into Defendant's actions.

17. In analyzing Defendant's computer and e-mails, CTG discovered that on September 7, 2017, Defendant conducted a search of his e-mail folders and subfolders by searching for CTG important and key customers. On that day, Defendant forwarded himself at his CTG e-mail 22 e-mails containing confidential client information.

18. On September 8, 2017, Defendant forwarded himself nine additional e-mails to his CTG work e-mail. CTG's investigation also revealed that Mr. Dunn printed 16 e-mails from his CTG e-mails. On September 15, 2017, Defendant forwarded himself 14 additional e-mails to his CTG e-mail. Thereafter, Defendant identified and electronically marked the e-mails he had sent to himself with a "Yellow flag." Defendant also created a "Yellow Category" and then on September 19, 2017, had 37 e-mails that were electronically flagged by himself sent to his personal e-mail at Orioilespkd@gmail.com. All of the e-mails forwarded to Defendant's private Gmail account contain confidential client information, which is not known to the public. Defendant's actions are in violation of CTG's policies and procedures.

19. In examining the e-mails that Defendant took, all the e-mails involved client information for CTG's important clients, with revenues exceeding five million dollars.

The information that he took was from active customers or targeted customers in which he was not directly involved with and thus, there was no need for him to have this information.

20.     On or about September 20, 2017, CTG discovery that Defendant had moved to Maryland.    Upon information and belief, Dunn stole CTG's client lists and other information and was going to work with and/or provide this confidential information to his son, Scott Dunn, who has a company in Maryland called Beltway Electronics Company, Inc., which is a direct competitor with CTG.

21.     Furthermore, Defendant refused to submit daily reports as to which Account Manager he was working with and what the objective was.    Based on his egregious actions, Defendant's employment was terminated for cause on September 21, 2017.

22.     CTG pays for certain employee's cell phone as part of its business operations.    These phones and numbers are property of CTG.    CTG paid for a phone and cellphone number for Mr. Dunn.    Mr. Dunn's number was (443) 253-9669.    Further, CTG paid under an installment plan a phone for Mr. Dunn to use.    The phone costs $749.99.

23.     In late September 2017, CTG realized that Defendant without any authorization called AT&T and had his CTG paid number switched to his personal Verizon account.    Further, after his termination of employment, Defendant never returned CTG's cellphone, yet CTG is still paying for it.    Since Defendant without any authorization had CTG's number switched to Defendant's personal Verizon account, CTG's has to pay for the entire phone immediately and does not even access to the number.

24.     Since Defendant unlawfully took CTG's trade secrets and property, CTG, through its attorney, by letter dated September 22, 2017, demanded that Defendant return CTG's e-mails and the information contained therein, and then destroy the documents and return CTG's

property, among other things, CTG's cellphone and number. Further, Defendant was reminded regarding his obligations under his solicitation and confidentiality agreement.

25.     Unfortunately, Defendant did not return the trade secrets and customer information, did not confirm that he destroyed the information, and did not return CTG's cellphone or number. By letter dated, September 29, 2017, CTG again requested that Defendant agree to abide by his agreement, return the cell phone and number and return, delete or destroy CTG's confidential information. Defendant refused CTG's request. Defendant indicated that the phone was his personal phone, despite the clear evidence that it belonged to CTG.

26.     By letter dated October 3, 2017, CTG, by its attorneys, requested that Defendant, among other things, abide by his agreements, return, destroy or delete CTG's confidential information. Defendant did not respond to this letter, has not returned CTG's confidential information, has not confirmed that he has deleted or destroyed CTG's trade secrets that he unlawfully stole, and has not returned CTG's phone and continues to use CTG's phone number without permission.

27.     Without a court injunction, CTG would be irreparably harmed. Its customer lists, preferences, pricing and other information, which is not known to the public, would benefit a competitor. Defendant could also contact CTG customers which he was introduced while employed by CTG and have them do business with another entity or can solicit customers who he had no contact with, but whose information he stole.

## COUNT I

## INJUNCTIVE RELIEF

28.     The allegations contained in paragraphs 1 through 27 are incorporated by reference herein with the same force and effect as if set forth herein.

29.     By virtue of the foregoing, CTG has demonstrated a likelihood of success on the merits and that a balancing of the equities favors the issuance of an injunction against Defendant.

30.     Unless Defendant is enjoined from the foregoing conduct, CTG will be irreparably harmed by: (a) disclosure and misuse of trade secrets, customer lists, and/or confidential information that is solely the property of CTG and its clients; (b) loss of confidentiality of information contained in clients' records, loss of confidentiality of clients' financial dealings, loss of confidence and trust of clients, loss of goodwill, and loss of business reputation; (c) loss of personnel, damage to office stability, and a threat to the enforcement of reasonable contracts; and (d) present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

31.     CTG has no adequate remedy at law.

## COUNT II

## BREACH OF CONTRACT

32.     The allegations contained in paragraphs 1 through 31 are incorporated by reference herein with the same force and effect as if set forth herein.

33.     By virtue of the foregoing conduct, Defendant has violated his agreement with CTG.  Defendant is prohibited from soliciting CTG's customers and clients that he had contact with during his employment with CTG.  Upon information and belief, Defendant is violating his agreement by soliciting CTG customers that he had contact with.

34.     Defendant is also required to return all CTG property and required to keep protect CTG's confidential information.  Defendant disclosed and used this information and refuses to confirm that he has deleted this information and refuses to return the information.

35.     Defendant is continuing to violate his contractual obligations.

36.     Based on Defendant's breach, CTG is entitled to its costs in bringing this action, including, but not limited to attorneys' fees and costs.

37.     As a consequence of the foregoing, CTG has suffered and/or will continue to suffer irreparable harm and loss.

## COUNT III

### MISAPPROPRIATION OF TRADE SECRETS

38.     The allegations contained in paragraphs 1 through 37 are incorporated by reference herein with the same force and effect as if set forth herein.

39.     CTG's customer names, contact information, preferences, and other information are trade secrets of CTG subject to protection under New York law.   This information is not known to the public.

40.     This information derives independent economic value by not being accessible, through proper means, to competitors such as Defendant, Scott Dunn and/or Beltway Electronics Company, Inc., which can profit from its use or disclosure.   CTG has spent significant sums, in terms of both financial and human resources, to develop and maintain this information, which is of great value to any competitor.

41.     CTG has taken more than adequate measures under the circumstances to maintain the secrecy of this information, including assigning computer access passwords to be used to access CTG computers, restricting access to business purposes, forbidding information and e-mails to mailed to unsecured private e-mail accounts, and having employees, including Defendant, sign agreements which expressly prohibit the use and disclosure of such information outside of CTG.

42.     The foregoing conduct of Defendant constitutes a conversation and misappropriation and misuse of CTG's confidential, trade secret information in violation of New York law.

43.     As a consequence of the foregoing, CTG has suffered and will continue to suffer irreparable harm and loss.

COUNT IV

**VIOLATION OF THE DEFEND TRADE SECRETS ACT OF 2016**

44.     The allegations contained in paragraphs 1 through 43 are incorporated by reference herein with the same force and effect as if set forth herein.

45.     As a result of Defendant's employment with CTG, he obtained access to CTG's trade secret information, including but not limited to, CTG's customer's names, contact information, certain orders these customers placed with CTG as well as pricing and customer preferences.  This information is unique to CTG and derive their independent economic value from not being commonly known or available to the public or to CTG's competitors.

46.     CTG has taken more than adequate measures under the circumstances to maintain the secrecy of this information, including assigning computer access passwords to be used to access CTG computers, restricting access to business purposes, forbidding information and e-mails to mailed to unsecured private e-mail accounts, and having employees, including Defendant, sign agreements which expressly prohibit the use and disclosure of such information outside of CTG.

47.     Defendant's misappropriation of CTG's trade secrets gives and continues to give Defendant an unfair and unjust advantage in the operation of a competing business.

48.     The use and disclosure, and even threatened use and disclosure of CTG's trade secrets by Defendant entitles CTG to immediate injunctive relief and damages, pursuant to 18 U.S.C. §1836(b)(3).

## COUNT V

## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT

49.     The allegations contained in paragraphs 1 through 48 are incorporated by reference herein with the same force and effect as if set forth herein.

50.     During his employment, Defendant with intent to defraud CTG, accesses CTG's computers and without authorization, sent and transmitted CTG's confidential, proprietary and trade secret information from computers used in interstate commerce to his private Gmail account.

51.     Also, Defendant unlawfully accessed CTG's AT&T account and had CTG's telephone number switched to his Verizon personal account.

52.     As a result, CTG is suffering and will continue to suffer immediate and irreparable harm.  Defendant's actions violate 18 U.S.C §1030.

## COUNT VI

## UNFAIR COMPETITON

53.     The allegations contained in paragraphs 1 through 52 are incorporated by reference herein with the same force and effect as if set forth herein.

54.     The foregoing conduct of Defendant constitutes an unfair method of competition.

55.     As a consequence of the foregoing, CTG has suffered and will continue to suffer irreparable harm and loss.

## COUNT VII

### CONVERSION/THEFT

56.     The allegations contained in paragraphs 1 through 55 are incorporated by reference herein with the same force and effect as if set forth herein.

57.     Defendant unlawfully took CTG's trade secrets and other confidential information.  Further, Defendant took CTG's cellphone and cell phone number which does not belong to him and is the property of CTG.

58.     Defendant refuses to return CTG's property.

59.     As a consequence of the foregoing, CTG has suffered and will continue to suffer irreparable harm and loss.


### PRAYER FOR RELIEF

As a result of the foregoing facts and legal claims, CTG requests that the Court enter judgment in its favor and against Defendant as follows:

1) Enjoining Defendant Patrick Dunn, whether alone or in acting in concert with others, from using any CTG's confidential, proprietary, and trade secret information;

2) Requiring Defendant to return all stolen confidential, proprietary and trade secrets information in his possession to CTG and destroying all said information;

3) Enjoining Defendant and anyone acting in concert or participation with him (including any agent, employee or representative of Beltway Electronics Company, Inc.) from contacting or soliciting any CTG client or customer or prospective customer that he had

contact with during his employment with CTG and contacting or soliciting any CTG customer or prospective customer whose information he misappropriated from CTG;

4) Requiring Defendant to return the cell phone and cell phone number that belong to CTG and taking all steps necessary to effectuate the change;

5) Awarding CTG compensatory damages to compensate for harm cause by Defendant's actions;

6) Awarding CTG punitive damages as permitted by applicable law;

7) Awarding CTG attorneys' fees pursuant to the parties' agreement and as otherwise permitted by law;

8) Awarding CTG its costs, including but not limited to all fees, in addition to costs or any experts or other out pocket cost borne by CTG in the prosecution of this action; and

9) Granting such other and further relief as the Court deems just and proper.


Dated: October 26, 2017
       New York, New York



                                Respectfully submitted,


                                *Attorneys for Plaintiff Crestwood Technology
                                Group Corp.*

                                BRENLLA, LLC

                                By: _____

                                    George F. Brenlla, Esq. (GB-9612)
                                    90 Park Avenue, 17th floor
                                    New York, New York 10016
                                    (212) 364-5173