```
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2
    -------------------------------------x
 3  CRESTWOOD TECHNOLOGY GROUP,

 4                          Plaintiff,

 5                          Case No. 17-cv-8283
         -vs-
 6
    PATRICK DUNN,
 7
                        Defendant.
 8
    -------------------------------------x
 9
                            United States Courthouse
10                          White Plains, NY
                            February 8, 2018
11                          11:18 a.m.

12
    Before:
13          HONORABLE KENNETH M. KARAS

14                              District Judge

15

16  APPEARANCES

17  BRENLLA, LLC
    GEORGE F. BRENLLA
18  Attorney for the Plaintiff

19  PATRICK DUNN, Pro se

20

21

22

23

24

25
```

1      THE COURT:  So for the record, you want to just state your

2  appearance?

3      MR. BRENLLA:  Good morning.  George Brenlla for the

4  plaintiff, Crestwood Technology Group.

5      MR. DUNN:  Good morning, Your Honor.  Patrick Dunn.

6      THE COURT:  Okay.  Good morning to you both.

7      All right.  So we are here as a followup.

8      Mr. Dunn had, before our last conference, had submitted

9  papers in support of a reconsideration motion, but they hadn't

10  arrived either here, and I don't think plaintiff's counsel had

11  received them, either.  I think they were waiting for you back

12  in your office, right?

13      MR. BRENLLA:  That is correct, Your Honor.

14      THE COURT:  Okay.  So what I did was I gave plaintiff an

15  opportunity to review these papers and submit a response, which

16  Mr. Brenlla did in a timely fashion.

17      And then, Mr. Dunn, you responded also in a timely fashion.

18      So I guess, Mr. Brenlla, if you want to go ahead, and since

19  you are the movant here -- you are not the movant for

20  reconsideration, but it's your initial application that led us

21  to this point.  Do you want to go ahead and add to anything you

22  want that's in the papers?

23      MR. BRENLLA:  Sure, Your Honor.  The last submission that I

24  got from Mr. Dunn, just to make sure, it was a memorandum with

25  various exhibits.  I don't have anything responding to my last

1  submission.

2        THE COURT:  It's titled Reply to Plaintiff's Opposition to

3  Defendant's Motion For Reconsideration of the Court's Order

4  Granting a Preliminary Injunction on November 29, 2017.

5        MR. BRENLLA:  Yes.  Then I responded to that one.

6        THE COURT:  Okay.

7        MR. BRENLLA:  Your Honor, I mean, the plaintiffs came here

8  because the undisputed evidence was that, contrary to all

9  policies and procedures, Mr. Dunn forwarded 37 emails which

10 contained confidential proprietary information to his personal

11 email account.  After his termination of employment, other

12 counsel retained by the plaintiff sent him three separate

13 letters in which to acknowledge deletion of or returning of that

14 confidential information, as well as there was an issue with the

15 telephone and telephone number, which I think we explored at the

16 last conference.

17       Mr. Dunn responded to one of the attorneys' letters in an

18 email never confirming deletion, and I believe that's Exhibit 2

19 to his reply papers.

20       The plaintiff's attorneys on two subsequent occasions sent

21 him letters saying, please return it or delete it.  Mr. Dunn

22 never confirmed deletion or never returned the proprietary

23 information, and therefore he caused the plaintiff to come here

24 to this court and file a motion for preliminary injunction,

25 which was granted initially.

1      Mr. Dunn -- there was a spate of motions filed, including a

2  sanctions motion, which I think Your Honor told me to respond

3  to, which I did.  There was a spate of motions, and then Your

4  Honor had given Mr. Dunn another opportunity to address why he

5  forwarded all of these emails to his personal email account.

6      Last time we were in open court, Mr. Dunn explained that

7  all 37 emails and its contents were, in fact, re-forwarded to

8  the plaintiff's CEO.

9      When we did an analysis of all of the emails by our chief

10  technology officer, Mr. Sparaco, we realized that that was an

11  untruth told to this Court with respect to what was

12  re-forwarded, I guess, to the CEO.  And that was in our

13  response.

14      And, quite frankly, based on all the papers here, Your

15  Honor, and the affidavit, I don't see -- take it -- I understand

16  this Court's ruling on the telephone number -- but I don't see

17  how -- why this Court should disturb in any manner its initial

18  finding that a preliminary injunction was properly issued.

19      THE COURT:  Okay.  Mr. Dunn?

20      MR. DUNN:  I am not sure of what to do, Your Honor.

21      THE COURT:  Well, whatever you -- whatever you want to do.

22  I mean, you can add to the papers.  Anything else you want to

23  just note for the record?

24      MR. DUNN:  I would think as long as Your Honor has reviewed

25  the reply to plaintiff's opposition to Defendant's motion, which

1    you just referenced.

2          THE COURT:  Yeah, yeah.

3          MR. DUNN:  I did state at the conclusion at the bottom this

4    case is about power, control and one vindictive, angry man with

5    significant resources exercising that power and control.  I

6    mean, other than that, there is not much else I could add to it.

7          THE COURT:  Okay.  So plaintiff's papers, you know, they

8    have the affidavit here from Nicholas Sparaco, S-P-A-R-A-C-O,

9    that goes through the emails that you had sent to your personal

10   email account and then compares what was in those emails to the

11   emails that you sent to the CEO, and said that there were some

12   emails -- in the conclusion is that there were some emails that

13   you sent to yourself that were not included in the email that

14   were sent to Mr. Mancino and Boyd, so there is not total

15   overlap.

16         So how do you respond to that?

17         MR. DUNN:  I mean, I would respond simply, Your Honor, that

18   I was trying to relocate, which is my right to do, back to my

19   home in Maryland, and when I did it, it was -- I read you the

20   letter in our conference call.  This is -- this is not a huge

21   company.  It's a small company.

22         THE COURT:  Well, I thought this was a case about power and

23   control, and it's sort of a David and Goliath theme there.

24         MR. DUNN:  Well, it's the CEO and myself, which we had a

25   very close personal relationship that went sour.

1        THE COURT:  Yes.

2        MR. DUNN:  And I was trying to make a point, and whether I

3   inadvertently didn't put all of those emails on there, it was in

4   the haste of moving.  There wasn't any malicious intent, and I

5   have put in the -- in your information that I sent back up, a

6   copy of the letter that I sent to the attorney --

7        THE COURT:  Yes.

8        MR. DUNN:  -- immediately that said I don't have any.  I

9   have deleted it just as they told me to do, but I made it very

10  clear to the attorney, this is the last time I will speak with

11  you.  I was fired.  Unjustly fired.  I mean, they state that I

12  was fired -- I don't know if you have seen the termination

13  letter -- but I was fired for sending these emails, but I have

14  sent you text messages, copies of text messages that shows I was

15  clearly fired for doing something the CEO didn't like, which was

16  moved back to Maryland permanently instead of keeping an

17  apartment up here, which I couldn't afford; and he was very

18  clear in saying -- as a matter of fact, on -- in the plaintiff's

19  documentation it says, on or about the 19th the IT people

20  discovered these nefarious emails that I sent to my personal

21  email, which was only to send to the CEO, which I promptly -- I

22  did that day.  If I didn't send them all, it was just in haste

23  that --

24       THE COURT:  Why didn't you use your own company email?

25       MR. DUNN:  Because I wasn't there, sir.  I wasn't -- I was

1   in the process of moving.

2        THE COURT:  And you can't remotely access your -- so on

3   your phone could you not get work emails on your phone?

4        MR. DUNN:  No.  I did not have access to my work emails on

5   that phone.  That's my personal phone that he paid for.  It was

6   a perk.

7        THE COURT:  Right.  But even when you set up your personal

8   phone, you can set up which email accounts you are going to be

9   able to access on your phone, and I would have thought any

10  professional would have used their phone to access their

11  personal and their business emails.

12       MR. DUNN:  No, sir.  I had a separate phone, which was the

13  Samsung phone that I returned to them upon their telling me,

14  send me the laptop, send me the phone, and send me the fob, the

15  key to get into the building.  I sent them back to them, and I

16  have records in there --

17       THE COURT:  But that's after, that's after the 20th, right?

18       MR. DUNN:  Yes, sir.  It is.

19       THE COURT:  So my question to you -- so you carried two

20  phones?

21       MR. DUNN:  Yes, sir.  The private phone was my phone that

22  they gave me as a perk.  It was a perk like many other perks

23  that they gave me.

24       THE COURT:  So I want to get this straight:  The company

25  gave you a company phone and a private phone?

1          MR. DUNN:  They only paid for one.

2          THE COURT:  Which one did they pay for?

3          MR. DUNN:  The private phone because that was --

4          THE COURT:  So you had a company phone --

5          MR. DUNN:  Yes, sir.

6          THE COURT:  -- that they didn't pay for?

7          MR. DUNN:  No, sir.  I paid for that.

8          THE COURT:  Why wouldn't you just pay for your private

9   phone and have them pay for the company phone?

10         MR. DUNN:  Because they originally paid for the private

11  phone as --

12         THE COURT:  Thinking it was the company phone?

13         MR. DUNN:  No.  I never used that phone for company.  When

14  I --

15         THE COURT:  Well, no, no, no.  What did they think they

16  were getting you when they got the phone?  A company phone.

17  That's what the company does.

18         MR. DUNN:  Your Honor, that is what the company --

19         THE COURT:  The phone, by the way -- so this screen shot of

20  the texts, when did you take this screen shot?

21         MR. DUNN:  The dates are on there, sir.

22         THE COURT:  No, no.  So when did you take -- so when did

23  you make the photocopy of this?

24         MR. DUNN:  I took the pictures of those just in the event

25  that I would need them.

PROCEEDINGS

1        THE COURT:  Yes, when did you take those pictures?

2        MR. DUNN:  That day on the 20th --

3        THE COURT:  Really?

4        MR. DUNN:  -- when they sent them to me.

5        THE COURT:  So you had the foresight to take -- and which

6    phone is it?  Is this the company phone or the personal phone?

7        MR. DUNN:  That was the company phone.  No, take that back.

8    That was my personal iPhone that the company paid for.

9        In the meeting --

10       THE COURT:  So you took these pictures on the 20th?

11       MR. DUNN:  Yes.  Yes, sir.  Right thereabouts and then made

12   copies of them.

13       THE COURT:  And this is the phone -- when you say

14   "thereabouts," what do you mean "thereabouts"?

15       MR. DUNN:  I don't want to mislead the Court.

16       THE COURT:  No, you certainly wouldn't want to mislead

17   because there is one that says September 21st.

18       MR. DUNN:  That's the next day, correct.

19       THE COURT:  Yes, so then you took it on the 21st?

20       MR. DUNN:  Some of them are on the 20th and some of them

21   are on the 21st.

22       THE COURT:  So you contemporaneously did this?

23       MR. DUNN:  I am not sure I understand.

24       THE COURT:  And this is the phone that -- what happened to

25   this phone?

1        MR. DUNN:  I can't find the phone.

2        THE COURT:  This is the one you can't find?

3        MR. DUNN:  No.  Because, Your Honor, I put in that packet

4   also when I -- when he terminated me, I immediately cancelled

5   their service and bought my own phone.

6        THE COURT:  So this phone -- this is the phone --

7        MR. DUNN:  A separate phone.

8        THE COURT:  -- that they bought for you?  I am trying to

9   understand.  This is the phone they bought for you, but it's the

10  personal phone?

11       MR. DUNN:  Correct.

12       THE COURT:  And you had the wherewithal to figure out that

13  this might be litigious someday; so what I am going to do is on

14  September 20th and September 21st after I've sent these texts, I

15  am going to take a picture of these.

16       MR. DUNN:  I did take a picture.

17       THE COURT:  Why would you do that?  Why wouldn't you just

18  go ahead and keep the phone?  Why didn't you -- if you just

19  assume, hey, I am going to have this phone, I will save these?

20       MR. DUNN:  I will give you the answer if I may.

21       THE COURT:  Yes.  Yes.

22       MR. DUNN:  Because when I transferred my number, which I

23  have put a proof in there I have had that number since 2003.

24       THE COURT:  Yeah.

25       MR. DUNN:  There is a document in the --

1        THE COURT:  Yes, yes, yes.

2        MR. DUNN:  -- in the exhibits.

3        THE COURT:  Yes.

4        MR. DUNN:  When I transferred the number to -- and bought

5   another phone --

6        THE COURT:  Yes.

7        MR. DUNN:  -- trying to remove myself from anything that

8   was theirs, I lost service on -- it didn't carry over in the 24

9   to 48 hours that they switched and got me a new phone; I had to

10  have a phone, and I didn't have any access to those text

11  messages.  It bleeded -- it deleted out about two and a half

12  days of text messages that came through because that phone was

13  shut off.  The new phone was in the mail.

14       THE COURT:  On the 20th it wasn't shut off.  You were using

15  it to make the texts.

16       MR. DUNN:  No, sir.  Yes, sir.  But I didn't take --

17       THE COURT:  You said you took a picture of these texts the

18  day that they were sent.

19       MR. DUNN:  That's not a picture with that phone.  It's with

20  someone else's phone to take a picture.

21       THE COURT:  I understand.  But these texts were on the

22  phone that you used to text the CEO with.

23       MR. DUNN:  Correct.

24       THE COURT:  And you said you took the picture of these

25  texts the day they were sent.

1        MR. DUNN:  Thereabouts that day, the 21st I took them, yes.

2        THE COURT:  Okay.  So and you were still using the phone

3   because there is a text on here from the 21st.

4        MR. DUNN:  Exactly.

5        THE COURT:  So the phone had service.

6        MR. DUNN:  No, you look at it, sir.

7        THE COURT:  No, no.  You had to have service or you

8   wouldn't have been able to text anybody.

9        MR. DUNN:  Sir, if you look at the picture --

10        THE COURT:  Answer the question, Mr. Dunn.

11        MR. DUNN:  I am not sure.

12        THE COURT:  In order for you to send a text, the phone has

13   to be in service.

14        MR. DUNN:  Oh, on the 21st, yes.

15        THE COURT:  Yes.  But it says "no service."  When you took

16   this picture, the phone didn't have service, but at the same

17   time it's the same day you say you sent the text.

18        MR. DUNN:  Your Honor, it could have been the evening of

19   the 21st.

20        THE COURT:  Oh, it was the evening.  And somehow between

21   when you sent the text and that evening, the service of the

22   phone stopped?  Is that what you are telling me?

23        MR. DUNN:  Yes, sir.

24        THE COURT:  Really?

25        MR. DUNN:  If you look at the receipt that I put in the --

1          THE COURT:  What about the 20th?  The 20th you said that

2     you took -- initially -- you changed your answer, which is a

3     pattern of yours, Mr. Dunn -- initially you said -- don't laugh

4     me at me.  It's true.  The record speaks for itself.

5          You said you took these pictures -- I am sorry.  Am I

6     bothering you?

7          MR. DUNN:  No, sir.

8          THE COURT:  Because I am a little concerned that you are

9     not being truthful with the Court.

10         MR. DUNN:  Yes, sir.  I am, Your Honor.

11         THE COURT:  No, you are not.  These pictures were taken of

12    a phone that did not have service.

13         MR. DUNN:  Correct.

14         THE COURT:  Okay?  And yet you said you -- initially you

15    said you took these pictures the day the texts were sent, which

16    can't be right.

17         MR. DUNN:  Your Honor, the texts were sent on the 21st as

18    well.

19         THE COURT:  On the 20th as well, and you said -- you said

20    you took the pictures that day or the next day, and then when

21    you realized that's not going to fly because it says "no

22    service," all of a sudden it's the evening the day after.

23         MR. DUNN:  No, sir.  I am nervous, and I am not sure of

24    what you are asking me.

25         THE COURT:  My questions have been very clear.

1

2     MR. DUNN:  I am not suggesting they are not, Your Honor,

3  but I am in a position here pro se that I don't --

4     THE COURT:  You are not pro se.  You are getting help from

5  somebody.  You are clearly getting help from somebody.  So don't

6  tell me you're pro se.  Don't play that card.  You are getting

7  help from an attorney.

8     MR. DUNN:  Sir, I have a friend from high school that I

9  have gone to counsel me.

10    THE COURT:  Who is an attorney?

11    MR. DUNN:  Yes, sir.

12    THE COURT:  Okay.  So you are getting help from an

13  attorney.

14    MR. DUNN:  Yeah, but I don't have an attorney with me

15  today.

16    THE COURT:  Well, you had an attorney prepare these papers.

17    MR. DUNN:  I prepared those papers with the guidance of a

18  friend of mine who practices law because --

19    THE COURT:  So you have an attorney helping you.

20    MR. DUNN:  I have someone guiding me.  Yes, sir.

21    THE COURT:  Guiding you, helping you are the same thing.

22    MR. DUNN:  Okay.

23    THE COURT:  So this phone where you took these pictures,

24  supposedly contemporaneous or soon thereafter, is the one that

25  you don't know where it is?

1          MR. DUNN:  No, sir.  I do not.

2          THE COURT:  I thought this was -- you thought maybe it was

3     in your office.

4          MR. DUNN:  I don't know if it was lost.

5          THE COURT:  Have you represented at some point in the

6     course of this litigation that that phone might be in your

7     office?

8          MR. DUNN:  Because I had --

9          THE COURT:  Yes or no?

10         MR. DUNN:  Yes, sir.  That's possible.

11         THE COURT:  Well, that can't be right because you say you

12    took pictures of the phone, and you were down in Baltimore when

13    this happened, right?

14         MR. DUNN:  Correct.

15         THE COURT:  So this phone could not have been in your

16    office.  You didn't leave it in your office.  That's not where

17    it was misplaced, right?

18         MR. DUNN:  Your Honor --

19         THE COURT:  Yes or no?

20         MR. DUNN:  No.  Obviously, I did not.

21         THE COURT:  So why do you keep saying things that are not

22    true, Mr. Dunn?

23         MR. DUNN:  Your Honor, I am not trying to say anything

24    that's untrue.  I am not attentive to the dates and the details.

25    I was fired.

PROCEEDINGS                                                    16

1       THE COURT:  That's what's problematic about trying to make

2   up a story is that you don't know what's going to come next.

3       MR. DUNN:  I was fired from a job.  I was in the process of

4   moving.  I was shocked that my career was over there, and it was

5   a very stressful time that I don't remember the dates pursuant

6   to things that actually happened.  I didn't --

7       THE COURT:  But you've never said that in all of the

8   answers to my questions, and by the way, I am responding to your

9   representations to the Court.  You are the one who introduced

10  into this record the fact that you might have left that phone in

11  your office.  That's clearly not true.

12      You then send the pictures of these texts which reveal, in

13  fact, that at the time you took the pictures the phone didn't

14  have service.  This is the phone that plaintiff is very

15  concerned about getting back because they are concerned that it

16  has information, proprietary information on.  You have said a

17  number of inconsistent things about the whereabouts of that

18  phone, and what makes them inconsistent is other things you have

19  injected into this record; nothing anybody else has done.

20      MR. DUNN:  Sir, that phone was not tied to the VPN of the

21  company, so it could have none of their proprietary information.

22      THE COURT:  Your credibility with the Court is just gone.

23  I mean, you can assert that all you want, but your

24  representations have been consistently belied by your other

25  representations or by the objective evidence in this case.

1          All right.  Do you want to answer the point that a number

2    of the emails that you sent to yourself did not make their way

3    in the emails that you sent to the CEO?

4          MR. DUNN:  Again, sir, back to what I said originally, I --

5    I had forwarded them to a GMail account.  The intent was to show

6    performance-related -- I red-lined those emails, and when they

7    were asked to be produced, they sent blank copies.  If the Court

8    would have seen that, you would see that those emails were

9    red-lined with comments of here is what I did and here is what I

10   did to try to save my job.

11         If I didn't forward them all, it wasn't intentional.  It

12   was in haste, I think, because I was just trying to forward

13   some -- a group of emails that would show performance-related

14   things over a long period of time, over a couple of years, and

15   each one of those emails was red-lined with my comments to the

16   CEO.

17         Once they start sending letters, legal letters, I did what

18   they said.  I deleted everything.

19         THE COURT:  When did you tell the CEO you were moving to

20   Baltimore?  Was it that text?

21         THE WITNESS:  No.  In the email, Your Honor.

22         THE COURT:  In the email on the 20th?

23         MR. DUNN:  Correct.

24         THE COURT:  And were you already in Baltimore?

25         MR. DUNN:  I was -- yeah, I was in the process of moving.

18

1      THE COURT:  In other words, you didn't tell the CEO before

2  you went to Baltimore?

3      MR. DUNN:  No, sir.

4      THE COURT:  All right.

5      MR. DUNN:  No, sir.

6      THE COURT:  All right.

7      MR. DUNN:  I took vacation days, and as soon as I sent him

8  that email, he started texting me.

9      THE COURT:  Did it occur to you maybe you should have told

10  him before you moved to Baltimore?

11      MR. DUNN:  No, sir.  Not due to the relationship that we

12  had.

13      THE COURT:  I thought you guys were buddies.

14      MR. DUNN:  No.  It went very sour in the last six months of

15  my employment.

16      THE COURT:  So out of spite you decide not to tell him

17  until you already moved?

18      MR. DUNN:  No, fear mainly.

19      THE COURT:  Fear?

20      MR. DUNN:  Yes, sir.

21      THE COURT:  Fear that he would fire you because you were

22  moving to Baltimore?

23      MR. DUNN:  Which is what he did.

24      THE COURT:  Okay.  All right.  Anything else, Mr. Dunn?

25      MR. DUNN:  No, sir.

1        THE COURT:  Okay.  Mr. Brenlla?

2        MR. BRENLLA:  No, Your Honor.

3        THE COURT:  Okay.  The motion for reconsideration is

4    denied.  The additional information Mr. Dunn has provided

5    doesn't change, in the Court's view, the fact that Mr. Dunn

6    forwarded to himself in an unsecure manner, under very peculiar

7    circumstances, propriety information having to do with specific

8    customer lists, all of which is laid out in the affidavit.

9        The story is that he forwarded these emails to himself, to

10   his personal email account, so he could then write the CEO an

11   email that would explain what it is that he has been doing that

12   would help the company.  The problem with that assertion is that

13   all of the emails that he sent to himself were not included in

14   the emails sent to the CEO, and so there was still propriety

15   information that Mr. Dunn had in his personal email, contrary to

16   company policy, that did not make its way to the CEO, so the

17   proffered explanation doesn't hold water.

18       In addition, there are very serious credibility issues

19   having to do, for example, with the cell phone.  There have been

20   a number of different representations that can't all be true and

21   are belied by, for example, the screen shots of the texts that

22   show that the phone had no service at the time the screen shots

23   were made, which either means that Mr. Dunn took those pictures

24   well after the events in issue, which is more likely, which

25   means he still has the phone; and his original assertion that

 1  the phone might have been in his office can't be true if one

 2  accepts the assertion he made today, which is that he took

 3  pictures of the phone on the 20th or 21st; and it's really hard

 4  to believe he took pictures on the 20th because the phone says

 5  "no service."  It couldn't send texts or receive texts if the

 6  phone had no service.

 7       And so that's just an example of where I think there are

 8  some very serious credibility issues.  So the original rationale

 9  for the injunction holds that Mr. Dunn, under very suspicious

10  circumstances forwarded propriety information to himself, has

11  kept the information, has asserted without substantiating that

12  he has deleted the information; has, as I said, given a number

13  of different representations about the phone, including who paid

14  for the business phone versus the personal phone, where the

15  phone that the company paid for went, and so for all of those

16  reasons the motion is denied.

17       The motion for sanctions is denied because the plaintiff

18  hasn't done anything that comes close to meriting sanctions.  In

19  fact, if anything, the misrepresentations have come from the

20  defense side of this case.

21       Now with respect to the phone, Mr. Brenlla, what do you

22  want to do?  The phone number I just -- I think Mr. Dunn, you

23  know, should get to keep his phone number.

24       MR. BRENLLA:  Your Honor, I certainly understand this

25  Court's ruling on the preliminary injunction with respect to the

1    phone number.  However, discovery will show that the phone

2    number was actually transferred in writing at an AT&T store, and

3    discovery will show that.  I certainly understand --

4         THE COURT:  You can make an application later on.  This is

5    without prejudice, just in terms of the injunction.

6         MR. BRENLLA:  Yeah, my understanding in speaking to the

7    AT&T representative was that there is -- I don't know -- there

8    are certain forms that you fill out to transfer the number,

9    whatever it may be; but I certainly understand Your Honor's

10   initial inclination, but irreparable harm and phone number --

11        THE COURT:  Yeah, I am not just sure what the irreparable

12   harm is.  That's my point.

13        MR. BRENLLA:  I certainly understand, Your Honor.

14        THE COURT:  Okay.

15        MR. BRENLLA:  With respect to the phone itself --

16        THE COURT:  I think you are entitled to the phone.

17   Mr. Dunn is saying he doesn't know where it is.

18        MR. BRENLLA:  I assume damages -- I assume damages for it.

19   I don't know what else --

20        THE COURT:  That's not irreparable harm.

21        MR. BRENLLA:  No.  No.  It's not irreparable harm.  He can

22   return the phone.  If he doesn't -- I don't know what to --

23        THE COURT:  I mean, if it turns out he is lying about

24   losing the phone, discovery will have to show that, but in the

25   meantime, I just don't see -- I already ordered the phone to be

1   returned.  He says he doesn't have it.  I am not sure what else

2   can be done at this point.

3        MR. BRENLLA:  I don't know what else can be done, either,

4   Your Honor, other than --

5        THE COURT:  Okay.

6        MR. BRENLLA:  -- move forward.

7        THE COURT:  Okay.  All right.  So do you want to set a

8   discovery schedule now?

9        MR. BRENLLA:  Yes, please, Your Honor.  Since all the

10  parties are here.

11       THE COURT:  Yes.  Let's do that, so we don't need to bring

12  Mr. Dunn back up from Maryland.

13       All right.  Let's get Rule 26 disclosures done by the end

14  of the month.  We will get all the fact discovery completed by

15  June 15th.  Document requests and interrogatories served by the

16  28th.  Depositions to be done by June 1st.  Requests to admit by

17  May 1st.

18       I assume, Mr. Brenlla, you are going to have experts, or

19  no?  I don't know if your IT person, for example, counts as an

20  expert.

21       MR. BRENLLA:  Your Honor, I would have to speak to him

22  because I --

23       THE COURT:  I'll tell you what, any experts you want to

24  have, their reports are due by July 15th, and it may be you

25  won't have any.

1        MR. BRENLLA:  Okay.

2        THE COURT:  Okay?  And if you do, then there is your

3   deadline.

4        Mr. Dunn's expert reports are due by August 15th.

5        And we will get together next we will say September 12th at

6   10:30.  If there is going to be any motion practice, the

7   movant's pre-motion letter is going to be due August 29.

8   Non-movant's response September 5.  I am going to refer the case

9   to the Magistrate Judge to supervise discovery.  The Magistrate

10  Judge who was assigned to the case is Judge Smith, who will

11  docket this.

12       If you want to stick around, Mr. Dunn, we can make you a

13  copy so you have it to take back with you.

14       All right.  Anything else?

15       MR. BRENLLA:  No, Your Honor.

16       THE COURT:  All right.  We are adjourned.

17       (Time noted:  11:45 a.m.)

18

19

20

21

22

23

24

25